**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

---

ELSA CONTRERAS ELNAHAS *et al.*,  :
          Plaintiff,  :
          :
       v.  :  No. 5:21-cv-01979
          :
KATHLEEN BAUSMAN *et al.*,  :
          Defendants.  :

---

**O P I N I O N**
**Defendants' Motion for Summary Judgment, ECF No. 22 – Granted**
**Plaintiffs' Motion for Summary Judgment, ECF No. 23 – Denied**

**Joseph F. Leeson, Jr.**                            **April 29, 2022**
**United States District Judge**

## I.    INTRODUCTION

This matter involves an I-130 petition filed by Plaintiff Elsa Contreras Elnahas

("Contreras"), which seeks lawful permanent resident status for Plaintiff Mohamed Elnahas

("Elnahas").[1]  On February 26, 2019, USCIS denied Contreras's petition, and Plaintiffs assert

that this decision was arbitrary, capricious, and in violation of the law.[2]  In addition, Plaintiffs

assert that USCIS exceeded its authority in rendering its decision and similarly violated Plaintiffs

due process rights.  Following the filing of the administrative record, Plaintiffs and Defendants

filed cross-motions for summary judgment.

Following a review of the administrative record in light of the guiding legal principles,

this Court concludes that the decision of USCIS to deny the petition was not arbitrary,

---

[1]    Plaintiffs also include Elnahas's three children, for whom lawful permanent resident
status is also sought.
[2]    Plaintiffs bring suit against Defendants Kathleen Bausman, former Field Office Director
of the Philadelphia USCIS Field Office; Tracy Renaud, former USCIS Director; and Alejandro
Mayorkas, current United States Secretary of Homeland Security.

capricious, or in violation of the law.  Moreover, Plaintiffs have failed to establish that Defendants exceeded their authority or otherwise violated Plaintiffs' due process rights. Accordingly, Plaintiffs' motion for summary judgment is denied and Defendants' motion for summary judgment is granted.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Elnahas was born in 1973 in Egypt.  *See* Def.'s Stmt. Undis. Facts ¶ 1 ("DSUF"), ECF No. 22-1; Pl.'s Resp. Undis. Facts ¶ 1 ("PRUF"), ECF No. 26-1.  In July 1998, Elnahas married Amina Jamal Ebrahim, who was also a citizen of Egypt.  *See* DSUF ¶ 3; PRUF ¶ 3.  Elnahas and Ebrahim had three children together, and the couple legally divorced on January 19, 2014.  *See* DSUF ¶ 4; PRUF ¶ 4.

Contreras is a naturalized citizen of the United States.  *See* DSUF ¶ 5; PRUF ¶ 5.  She and Elnahas married on June 18, 2014, in Allentown, Pennsylvania.  *See* DSUF ¶ 5; PRUF ¶ 5 On August 25, 2014, Contreras filed a first I-130 Petition for Alien Relative for Elnahas.  *See* DSUF ¶ 6; PRUF ¶ 6.  As part of the investigation into the I-130 petition, Elnahas and Contreras were interviewed in November 2014 by USCIS.  *See* DSUF ¶ 7; PRUF ¶ 7.  USCIS noted several discrepancies in the testimony provided by Elnahas and Contreras.  *See* DSUF ¶ 7; PRUF ¶ 7. On March 21, 2016, the United States' Consular Office in Cairo, Egypt interviewed Elnahas's three children.  *See* DSUF ¶ 8; PRUF ¶ 8.  The children indicated that Elnahas and Ebrahim remained in regular contact with one another.  *See* DSUF ¶ 9; PRUF ¶ 9.

In the summer of 2016, a Department of State (DOS) investigator visited Ebrahim's residence in Egypt.  *See* DSUF ¶ 11; PRUF ¶ 11.  The DOS investigator found that Elnahas's mother was living in the same building as Ebrahim, which was owned by Elnahas.  *See* DSUF ¶ 12; PRUF ¶ 12; Pls. Mot. 16, ECF No. 23-1.

In August of 2016, USCIS conducted a site visit of the purported marital residence in Allentown.  *See* DSUF ¶ 13; PRUF ¶ 13.  During the visit, the investigator spoke with Contreras's son, who indicated that Elnahas had been living in the residence years longer than Contreras originally indicated in her petition.  *See* DSUF ¶ 14; PRUF ¶ 14.

On March 17, 2017, United States Citizenship and Immigration Services (USCIS), issued a "Notice of Intent to Deny" (NOID) to Contreras, which indicated the agency's intent to deny her pending I-130 petition.  *See* DSUF ¶ 7; PRUF ¶ 7.  On May 31, 2017, USCIS issued a decision denying Contreras's I-130 petition. *See* DSUF ¶ 15; PRUF ¶ 15.  On February 12, 2019, this decision was affirmed by the Board of Immigration Appeals.  *See* DSUF ¶ 16; PRUF ¶ 16.

On March 14, 2019, Contreras filed a second I-130 petition for Elnahas.  *See* DSUF ¶ 17; PRUF ¶ 17.  On November 13, 2020, USCIS issued a NOID on Contreras's second petition.  *See* DSUF ¶ 18; PRUF ¶ 18.  On February 26, 2021, USCIS denied Contreras's second petition.  *See* DSUF ¶ 22; PRUF ¶ 22.  USCIS's denial of the 2019 petition also resulted in the automatic denial of the visa petitions filed on behalf of Elnahas's children.  *See* DSUF ¶ 22; PRUF ¶ 22.

On March 29, 2021, Plaintiffs filed suit before this Court, challenging USCIS's decision to deny her second I-130 petition.  *See* Compl., ECF No. 1.  On July 1, 2021, Defendants filed their Answer.  *See* Ans., ECF No. 6.  Thereafter, the parties submitted a Certified Administrative Record.  *See* Admin. Rec. Pt. I ("R1"), ECF No. 12; Admin. Rec. Pt. II ("R2"), ECF No. 12-1; Admin. Rec. Pt. III ("R3"), ECF No. 12-2; Admin. Rec. Pt. IV ("R4"), ECF No. 12-3;  Admin. Rec. Pt. V ("R5"), ECF No. 13; Admin. Rec. Pt. VI ("R6"), ECF No. 13-1; Admin. Rec. Pt. VII ("R7"), ECF No. 13-2.

On January 10, 2022, the parties filed cross-motions for summary judgment.  *See* Pls.

Mot.; Defs. Mot., ECF No. 22.  Following a series of responses and replies, the motions are

ready for review.  *See* Pls. Resp., ECF No. 26; Defs. Resp., ECF No. 27; Pls. Reply, ECF No. 28.

## III.   LEGAL STANDARDS

### A.   Review of Agency Decision on Motion for Summary Judgment – Review of
### Applicable Law

"Although 'summary judgment is the proper mechanism for deciding, as a matter of law,

whether an agency's action is supported by the administrative record' the district court is acting

as an appellate tribunal, and 'the usual summary judgment standard does not apply.'"  *See Zizi v.*

*Bausman*, 306 F. Supp. 3d 697, 702 (E.D. Pa. 2018) (quoting *Dorley v. Cardinale*, 119 F. Supp.

3d. 345, 351 (E.D. Pa. 2015)).  Rather, "[u]nder the APA, a district court may only set aside

agency action if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance

with law.'"  *See id.* (quoting 5 U.S.C. § 706(2)(a)).

Under the first group of factors, in determining whether the agency's action was

arbitrary, capricious, or an abuse of discretion, the court must "look[] at the reasoning the agency

employed in coming to its decision."  *See id.* (citing *Mirjan v. Atty. Gen. of United States*, 494 F.

App'x 248, 250 (3d Cir. 2012)).  In particular, an action is "arbitrary and capricious where 'the

evidence not only supports a contrary conclusion but compels it.'"  *See id.* (quoting *Yitang Sheng*

*v. Atty. Gen. of United States*, 365 F. App'x 408, 410 (3d Cir. 2010)).  A court may reverse the

agency decision "only where the administrative action is irrational or not based on relevant

factors."  *See id.* (quoting *NVE, Inc. v. Dep't of Health & Hum. Servs.*, 436 F.3d 182, 190 (3d

Cir. 2006)).  A decision is irrational or based on irrelevant factors where "the agency relied on

factors outside those Congress intended for consideration, completely failed to consider an

important aspect of the problem, or provided an explanation that is contrary to, or implausible in light of, the evidence." *See id.* (quoting *NVE, Inc.*, 436 F.3d at 190).

Under the final factor, in determining whether the agency's action was otherwise not in accordance with the law, the court must determine whether the agency's decision, even if "well-reasoned, violate[s] other statutory or regulatory strictures." *See id.*

The district court should base its review on "the administrative record already in existence, not some new record made initially in the reviewing court." *See id.* (quoting *Camp v. Pitts*, 411 U.S. 138, 142 (1973)). Moreover, a district court "may not substitute its judgment for that of the agency." *See id.* (citing *Judulang v. Holder*, 565 U.S. 42, 52 (2011)). Rather, the court must only determine whether the agency has articulated a "satisfactory explanation for its action including a rational connection between the facts found and the choice made . . . ." *See id.* (quoting *CBS Corp. v. FCC*, 663 F.3d 122, 137 (3d Cir. 2011)).

**B.      Spousal Eligibility for Lawful Permanent Residency through Form I-130 – Review of Applicable Law**

"A United States citizen may apply for [his or] her alien spouse to obtain lawful permanent residence by filing an I-130 Petition with USCIS." *See Young v. Bausman*, Civ. A. No. 19-1870, 2020 WL 996423, at *5 (E.D. Pa. Mar. 2, 2020) (citing 8 C.F.R. §§ 204.1(a)(1), 204.2(a)). However, such a petition cannot be approved if

> the alien has previously been accorded, or has sought to be accorded, an immediate relative or preference status as the spouse of a citizen of the United States . . . by reason of a marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws, or [ ] the Attorney General has determined that the alien has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws.

*See id.* (alterations in original) (quoting 8 U.S.C. § 1154(c)).

In the event USCIS "discovers evidence supporting marriage fraud, it will issue a [NOID], inform the petitioner of its reasons for denial, and allow the petitioner to present rebuttal evidence." *See id.* (quoting *Keita v. Barr*, No. CV 19-980, 2019 WL 5551425, at *5 (E.D. Pa. Oct. 28, 2019)).  Once a NOID is issued, the burden of proof shifts to the petitioner "to establish that the prior marriage was not entered into for the purpose of evading immigration laws." *See id.* (quoting *Keita*, 2019 WL 5551425, at *5).  USCIS may ultimately deny an I-130 petition "where there is substantial and probative evidence of marriage fraud." *See id.*

"Substantial evidence is more than scintilla, but . . . something less than a preponderance of the evidence." *See id.* (quoting *Salvador v. Sessions*, No. CV 18-01608, 2019 WL 1545182, at *3 (E.D. Pa. Apr. 9, 2019)).

## IV.   ANALYSIS

In their Complaint, Plaintiffs assert three claims.  First, Plaintiffs assert that Defendants violated the Administrative Procedures Act by rendering an arbitrary and capricious decision on Contreras's second petition.  Second, Plaintiffs claim that Defendants exceeded their statutory authority insofar as their decision to deny Contreras's second petition improperly relied on a prior BIA decision.  Finally, Plaintiffs assert that Defendants violated their rights to due process by denying the second petition.

Each claim is reviewed in turn below.  Based on the administrative record and arguments presented in the briefing, this Court concludes that Defendants are owed judgment as a matter of law on all three claims.  Accordingly, summary judgment is granted in Defendants' favor and against Plaintiffs on all counts.  Plaintiffs' motion for summary judgment is denied.

## A.      Administrative Procedures Act Claim

Plaintiffs first claim that Defendants violated the Administrative Procedures Act in rendering an arbitrary and capricious decision on Contreras's second I-130 petition.  Throughout the briefing in this matter, Plaintiffs have essentially made three arguments to support this claim. First, Plaintiffs argue that USCIS improperly relied on inconsistent testimony provided by Plaintiffs in 2014 as the basis for their denial.  Second, Plaintiffs argue that USCIS failed to appropriately consider the eleven affidavits submitted in rebuttal to the NOID.  Finally, Plaintiffs assert that USCIS failed to turn over certain derogatory information for inspection and rebuttal by Plaintiffs.

With respect to Plaintiffs' first and second claims, this Court concludes that USCIS did not act arbitrarily, capriciously, or in violation of the law in its review and weighing of the evidence before it.  With respect to Plaintiffs' third claim, this Court concludes that any error, to the extent it occurred, was harmless.  Accordingly, Plaintiffs' motion for summary judgment is denied, and Defendants' motion for summary judgment is granted.

### 1.      Discrepancies in Testimony as a Basis for Denial

Plaintiffs first assert that USCIS improperly based its denial of Contreras's I-130 petition on multiple discrepancies between the statements of Contreras and Elnahas during the interview process.  In particular, Plaintiffs argue that these discrepancies were, in fact, consistent testimony.  In the alterative, Plaintiffs argue that any discrepancies were remedied by their rebuttal arguments and supplemental document production following the NOID. Notwithstanding, this Court finds that USCIC provided a satisfactory explanation for its denial of the petition that was not arbitrary, capricious, or in violation of the law.

Beginning with the NOID, USCIS provided Plaintiffs with an extensive accounting of the reasons underlying its intent to deny the second petition.  In addition, the NOID placed Plaintiffs on notice of substantial evidence that supported USCIS's intent.  Plaintiffs are correct in asserting that the discrepant interview testimony influenced USCIS's intent to deny the petition.  However, the NOID included multiple other rationales, rooted in documentary and investigative evidence, that supported USCIS's intent to deny.  In particular, the NOID indicated that in light of the discrepant testimony, Fraud Detection and National Security (FDNS) Immigration Officers conducted a site visit of the marital residence in Allentown.  *See* R1 at 29, ECF No. 12.  During that visit, the FDNS uncovered further concerns, including a large inconsistency regarding how long Elnahas had been living at the marital residence.  In addition to the interview testimony and FDNS investigation, USCIS also reviewed extensive documentary evidence.  *See id.* 29–31.  USCIS went through each document provided, noting the probative value of each and indicating whether or not the document carried the petitioner's burden to establish a bona fide marriage.  *See id.*

In response to the NOID, Contreras submitted further documentary evidence in an effort to prove the bona fides of her marriage to Elnahas.  As it did in the NOID, USCIS again walked through each piece of documentary evidence, noting its probative value to the relevant question, and making a determination of whether the document carried the petitioner's burden.

While Plaintiffs argue that USCIS should have viewed this bevy of evidence differently, they fail to show how USCIS's decision was arbitrary, capricious, or otherwise in violation of the law.  In particular, Plaintiffs generally claim that the alleged discrepancies in the documentary rebuttal evidence are "not valid."  *See* Pls. Mot. 12.  Notwithstanding Plaintiffs claims to the contrary, the evidence that USCIS considered showed meaningful discrepancies,

not just in the oral testimony provided by Plaintiffs, but in the documentary and investigative evidence as well.

By way of example, Plaintiffs indicated to USCIS that they met in March of 2014. *See* R2 at 50, ECF No. 12-1. However, when FDNS visited the marital home and interviewed Contreras's son in August of 2016, the son reported that Elnahas had been living in the marital home for five or six years, which is sharply inconsistent with when Plaintiffs indicate they met. *See id.* at 47. Moreover, Plaintiffs provided a lease agreement to USCIS dated August 1, 2013, which was signed by both Elnahas and Contreras. *See id.* at 50. This, too, is inconsistent with Plaintiffs' claim that they met in March of 2014.

As noted above, this Court may not substitute its judgment for that of USCIS; rather, its purview is limited to determining whether the agency's decision was arbitrary, capricious or in violation of the law. That Plaintiffs view the above-mentioned discrepancies as insignificant does not carry their burden at this stage to show that USCIS was arbitrary, capricious, or otherwise in violation of the law when it found that these discrepancies, among others, warranted denial of Contreras's second petition. To the contrary, in light of the evidence in the record, this Court concludes that USCIS provided a satisfactory explanation for its decision to deny the second I-130 petition, rationally connecting the facts found to the decision made. Accordingly, Plaintiffs have failed to establish how USCIS's decision was arbitrary, capricious, or otherwise in violation of law.

### 2.      Whether USCIS Improperly Discounted Affidavits

Next, Plaintiffs claim that USCIS erred on the law by "discounting" some of the eleven affidavits submitted in rebuttal to the NOID. *See* Pls. Mot. 18. In particular, Plaintiffs claim that

USCIS placed too heavy a burden on the affiants to substantiate their claims.  *See id.*

Notwithstanding, this Court concludes that USCIS's decision was not in violation of the law.

 Contemporaneous with its review of the probative value of the affidavits, USCIS pointed

two cases that guided the weight to be afforded each.  *See* R2 at 51.  First, USCIS noted that

affidavits are most probative when supported by documentary evidence.  *See id.* (citing *In re P.*

*Singh*, 27 I. & N. Dec. 598, 609 (BIA 2019).  This is an appropriate statement of the law that

guides agency analysis of the strength of a particular affidavit.  Second, USCIS noted that

affidavits may also be afforded substantial evidentiary weight when they are "detailed, internally

consistent, and plausible; they include explanations of how the affiants acquired knowledge of

the facts set forth; and they are corroborated by historical evidence."  *See* R2 at 50 (citing *In re:*

*Patel*, 19 I. & N. Dec. 774, 786 (BIA 1988).  This, too, is a correct statement of the law

governing the evidentiary weight afforded affidavits in immigration matters.  Notably, Plaintiffs

cite to this very same standard in their motion for summary judgment.  *See* Pls. Mot. 18.

 Despite Plaintiffs' characterization of this challenge as one rooted in an error of law,

Plaintiffs are actually challenging USCIS's determination regarding the evidentiary weight to be

afforded each affidavit.  To that point, Plaintiffs argue that "[a]ll 11 of the affidavits meet [the]

standards" governing the evidentiary value of supporting affidavits.  *See id.*  Notwithstanding,

despite Plaintiffs' disagreement with USCIS's assessment of these affidavits, this Court

concludes that USCIS's assessment was not arbitrary, capricious, or in violation of the law.

Rather, the record indicates that USCIS was faithful to the legal principles it cited.  By way of

example, USCIS indicated that some of the affidavits had a low probative value where they did

not sufficiently describe the basis of their knowledge.  *See* R2 at 51.  On the other hand, USCIS

noted that certain affidavits were sufficiently detailed, insightful as to the basis of the affiant's

knowledge, and backed by historical evidence so as to qualify as substantial supporting evidence in petitioner's favor.  *See id.*  This weighing of each affidavit's evidentiary value is precisely what is contemplated by the governing standards.  *See In re P. Singh*, 27 I. & N. Dec. at 609; *In re: Patel*, 19 I. & N. Dec. at 786.  Accordingly, USCIS's review of these affidavits was not arbitrary, capricious, or in violation of the law.

> **3.     Whether USCIS Failed to Provide Plaintiffs Opportunity to Rebut**

Finally, Plaintiffs claim in their response to Defendants' motion that USCIS failed to provide them an opportunity to inspect and rebut certain derogatory evidence.  *See* Pls. Resp. 4–5.  In particular, Plaintiffs indicate that they were never provided the names and addresses of certain individuals in Egypt who were interviewed about the status of Elnahas's marriage to Ebrahim.  *See id.*  Notwithstanding, to the extent any such error occurred, it amounts to harmless error.

Plaintiffs take issue with USCIS's use of statements from witnesses who indicated that Elnahas and Ms. Ebrahim "were a married couple."  *See id.*; *see also* R2 at 48.  USCIS reported these statements in the NOID as part of its inquiry into whether Elnahas was legally free to marry Contreras.  However, as USCIS's final decision indicates, Contreras had met her burden to show that Elnahas was legally free to marry.  *See* R2 at 49.  Put another way, Contreras had sufficiently shown that Elnahas was divorced from Ebrahim such that he could again legally marry.  *See id.*  Accordingly, even if USCIS had failed to provide the names and addresses of the neighborhood witnesses, the error was harmless insofar as the issue was nonetheless decided in Plaintiffs' favor.  Accordingly, this Court does not find that USCIS committed reversable error on this claim.

**B.      Claim that Defendants Exceeded Statutory Authority**

Next, Plaintiffs claim that Defendants exceeded their statutory authority.  In particular,
Plaintiffs allege in their Complaint that Defendants improperly relied on a BIA decision in
rendering its decision on Contreras's second petition.  *See* Compl. ¶ 45.  Plaintiffs contend that
Defendants were required to make separate findings to support their denial of Contreras's second
petition.  *See id.*  However, Plaintiffs do not devote any of their motion for summary judgment to
this argument.  Upon review, this Court concludes that Plaintiffs have failed to show that
Defendants exceeded their authority.

Foremost, Plaintiffs do not indicate which BIA case Defendants allegedly improperly
relied on, referring to it only as "a different case completed in 2019."  Additionally, Plaintiffs fail
to identify which portions of USCIS's decision contained improper references to this prior case.
Moreover, the record evidence belies Plaintiffs' claim.  As it had in their NOID, USCIS provided
Plaintiffs with a detailed decision when it denied Contreras's petition.  Therein, USCIS walked
through each piece of additional evidence that Contreras had provided in rebuttal to the NOID,
explaining its evidentiary weight.  Nothing in the decision suggests that USCIS improperly relied
on some other BIA decision or otherwise failed to make its own findings in reaching its
conclusion.[3]  To the contrary, it is evident from the decision that USCIS reached individualized
findings on all of the evidence provided.

---

[3]      To the extent Plaintiffs are arguing that USCIS erred by referring to evidence gathered
during Contreras's first petition in the denial of her second petition, this argument is unavailing.
Foremost, Plaintiffs do not point to any statute or regulation that would act to prevent USCIS
from referring to previously-collected evidence in its review of a subsequent I-130 petition.
Moreover, as both parties correctly note, the relevant inquiry is "whether the bride and groom
intended to establish a life together *at the time they were married*."  *See In re: Laureano*, 19 I. &
N. Dec. 1, at *2 (BIA 1983); *see* Pls. Mot. 7 ("The issue in this case is whether or not this
marriage was valid at its inception.").  In light of that governing standard, it would strain
credulity to require USCIS to ignore evidence acquired during its investigation of Contreras's

Accordingly, summary judgment is granted in Defendants' favor on this claim, and Plaintiffs' motion for summary judgment is denied.

### C.      Due Process Claim

Finally, Plaintiffs claim that the denial of the I-130 petition represented a violation of their due process rights.  While Plaintiffs do not devote much of their summary judgment motion to this claim, the Complaint indicates that their due process claim is substantive in nature, citing to rights such as marriage as the bases for the claim.  In order for Plaintiffs to prevail in a cause for denial of their substantive due process rights, they must establish that they were "denied a protected interest by arbitrary or capricious government action."  *See Dorley v. Cardinale*, 119 F. Supp. 3d 345, 355 (E.D. Pa. 2015) (quoting *Iredia v. Fitzgerald*, No. 10-228, 2010 WL 2994215, at *5 (E.D. Pa. July 27, 2010)).[4]  As this Court analyzed above, Plaintiffs have failed to establish that USCIS acted arbitrarily or capriciously in denying Contreras's I-130 petition.

Accordingly, having failed to establish arbitrary or capricious action on the part of Defendants, Plaintiffs cannot prevail in their due process claim.  Therefore, summary judgment is granted in Defendants' favor on this claim, and Plaintiffs' motion for summary judgment on this claim is denied.

## V.      CONCLUSION

Following a review of the administrative record and briefing, this Court concludes that Plaintiffs have failed to show that Defendants acted in an arbitrary, capricious, or unlawful

---

first I-130 petition—which bore a closer temporally proximity to the inception of the claimed marriage—as that evidence is of the utmost relevance to the pertinent question.

[4]      The Complaint does not specify which Plaintiffs assert this due process claim against which Defendants.  However, to the extent Elnahas wishes to raise this claim, "[a]n alien does not have a 'liberty interest' in the 'favorable adjudication of an immigration petition.'"  *See Dorley*, 119 F. Supp. 3d at 355 (quoting *Iredia*, 2010 WL 2994215, at *5).

manner in their review of Contreras's second I-130 petition.  In addition, Plaintiffs have failed to

establish that Defendants' actions exceeded their regulatory authority.  Finally, Plaintiffs have

not made out a violation of their due process rights.  Accordingly, summary judgment is granted

in Defendants favor and against Plaintiffs on all claims.  Plaintiffs' motion for summary

judgment is denied.

A separate Order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge